IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| | * |
| CELESTE NADER, | |
| | * |
| Plaintiff, | |
| | * |
| v. | CIVIL NO.: WDQ-06-2890 |
| | * |
| FLOYD R. BLAIR, *et al.*, | |
| | * |
| Defendants. | |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Celeste Nader, on her own behalf and on behalf of a putative class of similarly situated Maryland state employees, has sued Floyd R. Blair, Anthony Cobb, Christopher J. McCabe, Neil E. Merkel, Heinrich J. Losemann, Jr., Joseph E. Steffen, Jr., and, individually and in his official capacity as Governor of Maryland,[1] Robert L. Ehrlich for: (1) unlawful employment termination based on political affiliation in violation of (a) the First and Fourteenth Amendments, and (b) Article 40 of the Maryland Declaration of Rights (Counts I and II); (2) deprivation of procedural due process in violation of the Fourteenth Amendment (Count III); and (3) civil conspiracy (Count IV).

---

[1] Ehrlich was succeeded as Governor by Martin J. O'Malley on January 17, 2007.

1

Pending is a motion by Defendants Blair, Cobb, Ehrlich, McCabe, Merkel, and Losemann (the "Defendants")to dismiss or, for summary judgment, and motions by Nader: (1) to strike affidavits supporting the Defendants' motion; and (2) for leave to file a surreply.  For the following reasons, the Defendants' motion will be granted, and Nader's motions will be denied.

I.  Background

Nader was employed by the Baltimore City Department of Social Services (the "BCDSS"), a department of Maryland's Department of Human Resources (the "DHR") from 1965 until her dismissal in December 2003.  Compl. ¶¶ 4-5.  From 1993 to her dismissal she served as the BCDSS's Assistant Director of Financial Services, or "Business Manager." *Id*. ¶ 5.

On November 19, 2003, Nader was called to a meeting with Blair, the interim Director of the BCDSS, Cobb, B.J. Harris, Marie Haavik, and Charles Henry,[2] and was told that she would be terminated without cause on December 5, 2003.  *Id*. ¶¶ 10, 17. Nader alleges that she was dismissed for "her political

_____

[2] Although the Complaint states that Cobb held a position at the BCDSS "for which he was unqualified," there is no further information on his role at the agency.  Compl. ¶ 16.  Henry was apparently one of Nader's supervisors (Pl.'s Opp'n Ex. 1 ¶ 13 (Nader Aff.), and there is no identifying information for Harris or Haavik in the pleadings.

persuasion, beliefs and opinion." *Id.* ¶¶ 8, 17.

Nader requested a hearing before the "Office of Administrative Hearings" to contest her dismissal but was instead given a "conference" before Merkel, an Employee Relations Officer in the DHR's Employer-Employee Relations Unit (the "EERU"). *Id.* ¶¶ 7, 13. Nader alleges that Merkel dismissed her appeal without a fair and impartial hearing, and identifies Losemann as the Manager of the EERU at the time. *Id.* ¶¶ 7, 14.[3]

Nader alleges that then Governor Ehrlich, directed Steffen, then "housed in the Office of the Department of Human Services," to terminate Democrats and Independents and replace them with Ehrlich's political supporters. *Id.* ¶¶ 11, 15. Steffen also "submitted a 'hit list' to [DHR] personnel, who, in turn, terminated several employees," none of whom was a Republican. *Id.* ¶ 35. Nader identifies McCabe as the Secretary of the DHR at the time of the alleged conduct. *Id.* ¶ 12. She seeks compensatory and punitive damages, reasonable costs and attorney's fees.[4]  Compl. ¶ 41.

---

[3] Losemann signed the EERU's decision dismissing Nader's administrative appeal in his capacity as Manager on January 7, 2004.  Defs.' Mot. Ex. 2B at 2.

[4] Paragraph 2 of the Complaint, which alleges proper jurisdiction, states that "Plaintiffs seek damages and injunctive relief based on § 1983, but no injunctive relief is specified in paragraph 41.  Comp. ¶¶ 2, 41.

II.  Nader's Motion to Strike

     Nader seeks to have stricken the affidavits of Ginger Scott, Merkel, and Losemann that were filed with the Defendants' motion. In her reply on her motion to strike, Nader also asks the Court to strike the supplemental affidavit of Scott supporting the Defendants' opposition.

II.A.  Standard of Review

     Federal Rule of Civil Procedure ("Rule") 56(e) provides in part that affidavits supporting a motion for summary judgment:

> shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

Fed. R. Civ. P. 56(e).  "Thus, a court may strike portions of affidavits that lack personal knowledge, contain hearsay, or rest upon conclusory statements." *Contracts Materials Processing, Inc. v. Kataleuna GmbH Catalysts*, 164 F. Supp. 2d 520, 527 (D. Md. 2001) (*citing Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996)).

4

II.B.   Analysis

II.B.1   Scott's Affidavits

Scott has been employed as the Assistant Director of BCDSS's Office of Human Resources since September 22, 2003.  Defs.' Mot Ex. 1 ¶ 2 (Scott Aff.)The Defendants have provided a supplemental affidavit by Scott that: (1) as Assistant Director of the BCDSS's Office of Human Resources, she is the custodian of the agency's personnel records; (2) the Reclassification Form, Position Description, and Retirement Request are prepared and maintained with Nader's personnel records in the ordinary course of business; and (3) the Position Description was prepared and maintained with Nader's personnel records as required under § 7-102 of Maryland's State Personnel and Pensions Article.

Nader argues that Scott's statements about events before Scott's employment are inadmissible hearsay.  Nader also believes that these documents are hearsay: (1) the November 8, 2001 memorandum reclassifying Nader's former position from "Administrative Program Manager III (MS)"[5] to "Administrative Program Manager IV (MS)" (Defs.' Mot. Ex. 1A, the "Reclassification Form"); and (2) the Maryland Department of Budget and Management's Office of Human Resources's January 1,

---

[5] The document's key notes that MS is an abbreviation for "Managerial Service."  Defs.' Mot. Ex. 1A.

2001 description of Nader's position (Defs.' Mot. Ex. 1B, the "Position Description," cited *infra* as "P.D."). Nader also argues that paragraph 5 of Scott's affidavit is inadmissible because the document it references, a November 19, 2003 memorandum from Nader to Blair requesting retirement (Defs.' Mot. Ex. 1C, the "Retirement Request"), was not sent to Scott.

Nader contends that the so-called "business-record exception" under FRE 803(6) is inapplicable because the BCDSS is not a business entity and its maintenance of personnel records is not a business activity. She further argues that divulging the contents of her personnel file is prohibited under Maryland's State Government Article § 10-616, which disallows disclosure of certain personnel records.

Nader's Retirement Request is not hearsay because it is an admission of a party opponent under FRE 801(d)(2); thus, no hearsay exception is required, and Scott's reference to Nader's Retirement Request in paragraph 5 of her affidavit is admissible.

The Reclassification Form and Position Description are admissible through the hearsay exception for public records and reports in FRE 803(8), which provides in part that "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . the activities of the

office or agency" are not excluded by the hearsay rule.  Fed. R. Evid. 803(8).  Thus the Reclassification Form, as a report of such an activity to the local department's administrator, is admissible.  Similarly admissible is the Position Description generated by the Department of Budget and Management's Office of Human Resources as required by Maryland Law.  Md. Code. Ann., State Pers. & Pens. § 7-102(a)(1).

Moreover, the proffered documents are not the kind of "personnel record[s]" protected by § 10-616 of Maryland's State Government Article.  The "personnel record[s]" protected under § 10-616 are "those documents that directly pertain to employment and an employee's ability to perform a job." *Kirwan v. The Diamondback,* 352 Md. 74, 83 (1998).  The Reclassification Form and the Position Description define the class, purpose, duties, and responsibilities of Nader's former position--they are not records that relate to Nader's ability to perform her former job, "hiring, discipline, promotion, dismissal, or any matter involving [her] status as an employee." *Id.* Nader's Retirement Request is not protected by § 10-616 because it is merely a request for accrued benefits and it does not reflect the circumstances of her termination nor touch upon her ability to perform her former job.

As the custodian of BCDSS's personnel files, Scott has authenticated the proffered documents' authenticity. Fed. R. Evid. 901(b)(1). Furthermore, "[t]he court may permit affidavits to be supplemented or opposed by . . . further affidavits." Fed. R. Civ. P. 56(e).  Scott's affidavit and supplemental affidavit will not be stricken.

II.B.2  Merkel's and Losemann's Affidavits

Nader argues that the affidavits of Merkel and Losemann should be stricken because: (1) the Secretary of the DHR did not authorize either affiant to hold a hearing on Nader's termination; and (2) paragraphs 7 of Merkel's and Losemann's affidavits contain identical conclusory statements.

Nader does not explain how whether Merkel or Losemann was authorized to hold a hearing is relevant to the admissibility of their affidavit testimony, which consists only of their own statements about matters of which they have personal knowledge.

Nader contends that the identical statement made by Merkel and Losemann in paragraphs 7, "I had no authority or control over [Nader's] work," is conclusory because both Merkel and Losemann had the authority to uphold her termination.  A conclusory statement is one that "[e]xpress[es] a factual inference without stating the underlying facts on which the inference is based."

8

Black's Law Dictionary, "conclusory" (Westlaw, 8th ed. 2004).
Merkel and Losemann have stated that neither supervised Nader nor
had any authority or control over anyone who supervised her at
the BCDSS.  Merkel's and Losemann's authority to uphold Nader's
termination on an administrative appeal does not negate their
assertions that they did not supervise her.  Accordingly,
Merkel's and Losemann's affidavits will not be stricken, and
Nader's motion to strike will be denied.

III.  Nader's Motion for Leave to File a Surreply

Nader also seeks to file a surreply, because the Defendants'
Reply "discusses certain arguments and cases not cited in the
Memorandum in Support of their Motion to Dismiss," and
"mischaracterizes certain other cases."  Pl.'s Mot. for Leave to
File a Surreply 1.

"Unless otherwise ordered by the Court, surreply memoranda
are not permitted to be filed."  D. Md. R. 105(2)(a).
"Surreplies may be permitted when the moving party would be
unable to contest matters presented to the court for the first
time in the opposing party's reply."  *Khoury v. Meserve*, 268 F.
Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 Fed. App'x 960 (4th
Cir. 2004).

Nader's proposed surreply offers additional argument and

authority for her contention that summary judgment is premature. Pl.'s Opp'n to Defs.' Mot. to Dismiss or, in the alternative, for Summ. J. 5-8.  Her desire to interpret the cases introduced by the Defendants in their Reply is an insufficient ground for surreply.  Accordingly, Nader's motion for leave to file a surreply will be denied.

IV.  The Defendants' Motion to Dismiss or for Summary Judgment

The Defendants argue that the Court should dismiss Nader's claims or grant them summary judgment because: (1) Nader's former position was not constitutionally protected from dismissal for political affiliation (Counts I and II); (2) Nader had no property interest in her employment to entitle her to a procedural due process claim (Count III); and (3) Nader's civil conspiracy claim is legally insufficient (Count IV).

The Defendants also contend that they are entitled to immunity on Nader's state-law claim under the Maryland Tort Claims Act (the "MTCA"),[6] and that Ehrlich is immune from suit in his official capacity in federal court under the Eleventh Amendment.

The Defendants argue specifically that Nader's claims against Merkel and Losemann should be dismissed because neither

---

[6] Md. Code Ann., State Gov't §§ 12-101 to 12-110.

was involved in the decision to terminate her employment, and both are entitled to qualified immunity from her due-process claim for their roles in denying her administrative appeal.

Lastly, the Defendants move for an order denying certification of Nader's putative class.

IV.A.  Standard of Review

IV.A.1.  Conversion of Motion to Dismiss to One for Summary Judgment

Under Rule 12(b)(6), a motion to dismiss for failure to state a claim for relief should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *Mylan Laboratories, Inc. v. Raj Matkari, et al.*, 7 F.3d 1130, 1134 (4th Cir. 1993).

If the court considers matters outside of the pleadings on a Rule 12(b)(6) motion, it shall treat the motion as one for summary judgment, to be disposed of under Rule 56, and provide all parties a "reasonable opportunity to present all material made pertinent to such a motion."  Fed. R. Civ. P. 12(b).  "When a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment."  *Gay v. Wall,* 761

11

F.2d 175, 177 (4th Cir. 1985).

Under Rule 56(c), summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  Only "facts that might affect the outcome of the suit under the governing law" are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id.* at 249.  Thus, "the judge must ask . . . whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id.* at 252.  The court must also view any inferences drawn from the underlying facts "in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment."

12

*Anderson,* 477 U.S. at 257.  The mere existence of a "scintilla" of evidence is insufficient.  *Id.* at 252.  If the nonmoving party fails to show an essential element of his case on which he will bear the burden of proof at trial, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. 317, 323; Fed. R. Civ. P. 56(e).

IV.A.2.   Opportunity for Discovery

Nader argues that the Court should refrain from converting the Defendants' motion to one for summary judgment because there has not been adequate time for discovery.

A party opposing a motion for summary judgment may move for a stay of consideration of the motion under Rule 56(f) because she has not had an opportunity for discovery.  *See* Fed. R. Civ. P. 56(f).

Generally, "summary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson*, 477 U.S. at 250 n.5.  "'Sufficient time for discovery is considered especially important when the relevant facts are exclusively in the control of the opposing party,' . . . particularly . . . when a case involves complex factual questions about intent and

13

motive." *Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 246-47 (4th Cir. 2002) (*quoting* 10B Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 2741, at 419 (3d ed. 1998)).

But "a party may not simply assert in its brief that discovery [is] necessary and thereby overturn summary judgment when [she] fail[s] to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit." *Nguyen v. CNA Corp.,* 44 F.3d 234, 242 (4th Cir. 1995) (internal quotation marks omitted). "[T]he failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery [is] inadequate." *Harrods,* 302 F.3d at 244-46, n.19 (internal quotation marks omitted).

Nader has not filed an affidavit under Rule 56(f) "that particularly specifies legitimate needs for further discovery."[7] *Nguyen,* 44 F.3d at 242. Accordingly, the Court will consider matters outside of the pleadings and will treat the Defendants'

---

[7] An untimely affidavit by Nader's counsel attached to her proposed surreply attests that discovery is "necessary in order to show the motive and intent of the various Defendants and others in this case." Pl.'s Mot. for Leave to File a Surreply 1 (Aff. of Joseph S. Kaufman).
   Evidence of the Defendants' motive or intent is not relevant because the Defendants assert that Nader's claims fail as a matter of law regardless of whether her dismissal was politically motivated. Def.'s Mem. In Supp. of Def.'s Mot. 2.

motion as one for summary judgment.

IV.B.  Merits of Claims

IV.B.1.  Dismissal for Political Affiliation (Counts I and II)

The Defendants argue that even if Nader's allegation that she was terminated for her political affiliation were true, she would fail to state a claim for relief under the U.S. Constitution or Article 40, because political affiliation is a constitutionally permissible criterion for her former position.

IV.B.1.a.  Law

The First Amendment, made applicable to the States by incorporation under the Due Process Clause of the Fourteenth Amendment, provides in relevant part that "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble."  U.S. Const. amend. I.  *Cantwell v. State of Connecticut*, 310 U.S. 296, 303 n.3 (1940).  Article 40 provides:

> That the liberty of the press ought to be inviolably preserved; that every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects, being responsible for the abuse of that privilege.

Md. Const., Decl. of Rights art. 40.  "Article 40 is *in pari materia* with the First Amendment," thus the Court's analysis of

15

Nader's First Amendment claim applies equally to her claim under
Article 40.  *WBAL-TV Div., Hearst Corp. v. State*, 300 Md. 233,
243 n.4 (1984).

Because dismissals for political affiliation "achiev[e] by
indirection the impermissible result of a direct command to a
government employee to cease exercising protected rights of free
political association and speech," *Stott v. Haworth,* 916 F.2d
134, 140 (4th Cir. 1990), they are generally barred by the First
Amendment unless the responsible government authority "can
demonstrate that party affiliation is an appropriate requirement
for the effective performance of the public office involved."
*Branti v. Finkel,* 445 U.S. 507, 518 (1980).

For some government positions, political affiliation may be
an appropriate requirement to ensure that the "policies which the
electorate has sanctioned are effectively implemented."  *Elrod v.
Burns*, 427 U.S. 347, 372 (1976).  Thus, "if an employee's private
political beliefs would interfere with the discharge of his
public duties, his First Amendment rights may be required to
yield to the State's vital interest in maintaining governmental
effectiveness and efficiency."  *Branti,* 445 U.S. at 517.

16

"[T]he critical and dispositive question is whether a particular position is one that requires, as a qualification for its performance, political affiliation." *Stott*, 916 F.2d at 143. In *Stott*, the Fourth Circuit instructed that answering this question requires a two-step inquiry:

> "A threshold inquiry . . . involves examining whether the position at issue, no matter how policy-influencing or confidential it may be, relates to 'partisan political interests ... [or] concerns.' [*Branti*,] 445 U.S. at 519[]. That is, does the position involve government decisionmaking on issues where there is room for political disagreement on goals or their implementation?  Otherwise stated, do party goals or programs affect the direction, pace, or quality of governance?
> If this first inquiry is satisfied, the next step is to examine the particular responsibilities of the position to determine whether it resembles a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement. . . . [I]n conducting this inquiry, courts focus on the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office."

*Stott*, 916 F.2d at 141-42 (*quoting Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 241-42 (1st Cir. 1986) (*en banc*), *cert. denied*, 481 U.S. 1014 (1987)).  Although a position may provide some policy-making authority or require frequent contact with the public, the employee's First Amendment rights are not necessarily trumped--the court's "inquiry is one of degree." *Akers v. Caperton*, 998 F.2d 220, 225 (4th Cir. 1993).

The Court recognizes that Nader's former position of

17

Business Manager is classified by the Department of Budget and Management as a management-service position.  P.D. 1.  Section 5-208 of Maryland's State Personnel and Pensions Article provides that "[a]ll personnel actions concerning an employee . . . in the management service shall . . . be made without regard to the employee's political affiliation, belief, or opinion."  Md. Code Ann., State Pers. & Pens. § 5-208(c).

Although deference is due to a state's determination of which government positions require political affiliation for performance and thus should be exempt from First Amendment protection, those determinations are not unreviewable--whether political affiliation is a proper qualification "is a question of law to be ultimately decided by the courts."  *Stott*, 916 F.2d at 142-43.  Thus the Court makes its own legal determination of whether Nader's former position is protected by the First Amendment based on the provided evidence.

IV.B.1.b.  Analysis

The Defendants argue that the Court can make this determination in their favor based on the Position Description proffered with their motion.  Although Nader has moved to strike the Position Description as hearsay, the document is admissible and relevant evidence for determining whether Nader's former

position is one that requires political affiliation as a
performance criterion.

The Position Description divides the Business Manager's
"essential job functions and other assigned duties" into six
areas and assigns each a percentage according to their
importance: (1) Administration (20%); (2) Budget and Accounting
(20%); (3) Automatic Systems Office (the "ASO") (20%); (4) Office
Services (20%); (5) Audits (10%); and (6) Business Management
Activities (10%).  *Id*.

In the area of Administration, the Business Manager, "[a]s a
member of the agency's executive administrative team (Director's
Cabinet)," is tasked to "plan, coordinate, and evaluate agency
operations."  *Id*.  She is to "[p]rovide leadership in business
activities and inform staff of appropriate policies and
procedures,"  and "[a]rbitrate issues arising out of programmatic
needs and fiscal constraints to achieve maximum productivity."
*Id*.

The Defendants argue that there are "fundamental differences
between the Democratic and Republican parties' approaches to
administering social services programs," those partisan
differences may indeed affect decisions required to "plan,
coordinate, and evaluate" the operations of the agency

19

implementing those programs.  Defs.' Mem. in Supp. of Mot. for Summ. J. 17.  The Position Description indicates that the Business Manager "[a]dvises staff of policy changes to ensure program accuracy, compliance, and integrity."  P.D. 11.

Although the Business Manager has several administrative and support duties, the Business Manager is also charged with "coordinat[ing] agencywide audit activities with federal, state, legislative and local auditors," and "[r]epresent[ing] the department in Annapolis to defend [its] audit reports."  *Id*. at 6.

The Business Manager "[e]nsure[s] that fiscal activities are performed in accordance with federal, state, and local policies, procedures, and strategic plans,"  P.D. 2., and "[r]epresent[s] the agency city-wide and promote[s] a positive agency image."  *Id*.  As the BCDSS's liaison to the Baltimore Mayor's Mental Health Committee, the Business Manager is tasked to "[m]eet monthly with other community and agency representatives to ensure that mental health services are accessible to those children and adults who need [them]," and to conduct "[s]ite visits to mental health facilities and lead agencies."  *Id*.  The Business Manager also serves as the Chairperson of the Mental Health Committee's Finance Committee, "which reviews [the] multi-million dollar

20

budget of the lead mental health agencies." *Id*.  The Position
Description also notes that the Business Manager "[h]andle[s] all
issues in the absence of the Director[.]" *Id*. at 7.

The Business Manager's role as liaison to the Mayor, state
and local government, private companies, agency clients, vendors,
and the general public, and her status as only one of six
assistant directors reporting directly to the Director of the
BCDSS, demonstrate that the position's "particular
responsibilities" resemble those of "a policymaker, a privy to
confidential information, a communicator, or some other office
holder whose function is such that party affiliation is an
equally appropriate requirement." *Stott*, 916 F.2d at 142.
Accordingly summary judgment for the Defendants on Counts I and
II is appropriate.

IV.B.2.  Procedural Due Process (Count III)

The Defendants argue that Nader's due-process claims fail
because she was an at-will employee and thus had no
constitutionally protected property interest in her employment.

"[T]o determine whether due process requirements apply in
the first place, we must look . . . to the nature of the interest
at stake . . . to see if the interest is within the Fourteenth
Amendment's protection of . . . property." *Board of Regents of*

*State Colleges v. Roth*, 408 U.S. 564, 570-71 (1972); *Gardner v.
Baltimore Mayor and City Council,* 969 F.2d 63, 68 (4th Cir.
1992).  "If there is no cognizable property interest, there is no
need to reach the question of whether a purported deprivation was
arbitrary or capricious." *Gardner*, 969 F.2d at 68.  Property
interests, rather than arising from constitutional provisions,
are created and "defined by existing rules or understandings that
stem from an independent source such as state law." *Roth,* 408
U.S. at 577.

It is undisputed that Nader was in a management-service
position, P.D. 1, and the Maryland legislature has clearly
indicated that a position in the management service is not a
property interest subject to procedural due process safeguards.
Section 11-305 of the State Personnel and Pensions Article
provides that "an employee who is in a position . . . in the
management service . . (1) serves at the pleasure of the
employee's appointing authority; and (2) may be terminated from
employment for any reason, solely in the discretion of the
appointing authority."[8]  Md. Code Ann., State Pers. & Pens. § 11-
305; *see also Dozier v. Department of Human Resources,* 164 Md.

---

[8] Maryland's Code of Regulations 17.04.05.05 clarifies that
employees subject to termination under § 11-305 "may be
terminated or disciplined for any reason *that is not illegal or
unconstitutional*" (emphasis added).

22

App. 526, 538 (Md. Ct. Spec. App. 2005) (Maryland employee subject to at-will termination under § 11-305 had no property interest in continued employment).  As there was no property interest within the Fourteenth Amendment's protection, summary judgment for the Defendants on Count III is appropriate.

IV.B.3.  Conspiracy (Count IV)

Nader's fourth count, entitled "Violation of Statutory and Common Law," alleges that the "Defendants, acting in concert, conspired with each other" to deprive her and putative class members of "rights under the statutory provisions and common law" and "constitutional rights."  Compl. ¶ 41.  Nader did not counter the Defendants' argument that the claim is legally insufficient.

The claim is apparently intended as one for civil conspiracy; however, conspiracy is not recognized as an independent civil cause of action under Maryland law.  *Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc.,* 340 Md. 176, 191 (1995).  Nader does not expressly allege a claim for conspiracy under the federal civil rights conspiracy statute, 42 U.S.C. § 1985, nor does her complaint allege "an agreement or a 'meeting of the minds' by defendants to violate the claimant's

constitutional rights" as the law requires to prove a § 1985 conspiracy. *Simmons v. Poe,* 47 F.3d 1370, 1377 (4th Cir. 1995).

As a claim to the same constitutional causes of action articulated in Counts I-III, Count IV is redundant, and no other constitutional, statutory, or common-law claims are specified to provide fair notice under the pleading standard of Rule 8. *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (Rule 8(a)(2) requires "fair notice of what the plaintiff's claim is and the grounds upon which it rests"). Accordingly, summary judgment on Count IV is appropriate.

IV.B.4.   Immunity Defenses

IV.B.4.a.   Eleventh Amendment Immunity

Nader sues all of the Defendants in their individual capacities except for Ehrlich, whom she sues both individually and in his official capacity as the Governor of Maryland.

Under the Eleventh Amendment, "nonconsenting States may not be sued by private individuals in federal court." *Bd. of Tr. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). An act of Congress may abrogate the States' Eleventh Amendment immunity only if Congress has unequivocally expressed its intent to do so and the act is a valid exercise of the power granted by the enforcement provisions of § 5 of the Fourteenth Amendment.

*Garrett*, 531 U.S. at 363-64.  The Supreme Court has held that Congress did not express its intent to abrogate the States' immunity under 42 U.S.C. § 1983.  *Quern v. Jordan,* 440 U.S. 332, 342 (1979).

"The Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (internal quotation marks omitted).  A suit for damages against a state official in his official capacity is treated like a suit against the state itself, and is thus barred absent the state's consent.  *Lizzi v. Alexander*, 255 F.3d 128, 136 (4th Cir. 2001), *overruled in part on other grounds by Nevada Dep't. of Human Resources v. Hibbs*, 538 U.S. 721 (2003).

Nader is suing for damages, Compl. ¶ 41, and Ehrlich in his official capacity has not consented to the Court's jurisdiction. Accordingly, summary judgment for Ehrlich in his official capacity on Counts I and II would be appropriate.

IV.B.4.b.  Qualified Immunity

The Court notes that, in a footnote of their Reply, the Defendants assert qualified immunity to Nader's First-Amendment claims, but declines to consider the validity of this defense until it is properly raised and Nader is given an opportunity to

respond. *Clawson v. FedEx Ground Package System, Inc.,* 451 F. Supp. 2d 731, 734-35 (D. Md. 2006) (*citing U. S. v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006) (arguments raised for the first time in a reply memorandum ordinarily not considered).

IV.B.5.  Claims against Merkel and Losemann

The Defendants argue that Nader's claims against Merkel and Losemann must fail because the Complaint contains no mention of their involvement in the alleged unconstitutional dismissal. Nader offers no counter-argument.

Merkel is identified in the Complaint as an Employee Relations Officer in the DHR's EERU.  Compl. ¶ 7, 13.  Nader alleges that, in response to her request for an administrative hearing following her dismissal, Merkel instead held a "conference," after which he dismissed Nader's appeal without providing her a fair and impartial hearing or an opportunity to defend herself.  *Id*. ¶ 7.  The only allegation against Losemann is that he was then the Manager of the EERU.  *Id*. ¶ 14.

"In order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights."  *Wright v. Collins*  766 F.2d 841, 850 (4th Cir. 1985) (internal quotation

26

marks omitted).

The remaining claims in Counts I and II are founded on the alleged wrongful termination for political affiliation.  Although Nader's Complaint alleges Merkel's role in dismissing her administrative appeal of termination, that allegation goes only to support Nader's due process claim, and there is no allegation that either Merkel or Losemann acted personally in the alleged unconstitutional dismissal.  Accordingly, summary judgment for Merkel and Losemann on Counts I and II would be appropriate.

IV.C.  Class Adjudication

Nader sues individually and as the representative of a putative class defined as: "former State of Maryland employees who seek relief from illegal and unconstitutional termination of employment for political purposes, beliefs and opinions in violation of Federal and Maryland constitutional provisions." *Id*. ¶ 1.

The Defendants contend that the putative class is untenable, and Nader offers no counter-argument.  "When a person sues or is sued as a representative of a class, the court must--at an early practicable time--determine by order whether to certify the action as a class action."  Rule 23(c)(1)(A).  "In deciding whether to certify a class, a district court has broad discretion

27

within the framework of [Rule] 23." *Boulware v. Crossland Mortg.*
*Corp.,* 291 F.3d 261, 268 n.4 (4th Cir. 2002) (internal quotation
marks omitted).  Although the named plaintiff generally will move
to certify the class, a "defendant need not wait for the
plaintiff to act," and "may move for an order denying class
certification."  5-23 James Wm. Moore *et al.*, *Moore's Federal*
*Practice* § 23.82 (3d. ed. Lexis) (*citing Bryant v. Food Lion,*
*Inc.*, 774 F. Supp. 1484, 1495 (D.S.C. 1991).

Because "the critical and dispositive question is whether a
particular position is one that requires, as a qualification for
its performance, political affiliation," political patronage
"cases must necessarily be considered individually." *Stott,* 916
F.2d at 143, 143.  Thus, "mere allegation of political patronage
dismissal falls short of stating a cause of action capable of
class treatment." *Id*.  Accordingly, class certification will be
denied.

V.  Conclusion

For the reasons stated above, Nader's motions to strike and
for leave to file a surreply will be denied, and the Defendants'
motion to dismiss, or, in the alternative for summary judgment

will be[9] granted.   Certification of Nader's putative class will

be denied.

September 27, 2007                     /s/
Date                         William D. Quarles, Jr.
                             United States District Judge

---

[9] Although Defendant Steffen is not a party to the Defendants'
motion, the legal deficiencies of Nader's claims warrant summary
judgment in his favor, which the Court will grant *sua sponte*.